Good morning, your honors. May peace be with the court. Elisabelle, on behalf of Antonio Blackstone, and I'd like to reserve two minutes of my time for rebuttal. We'll try to help you, but keep your eye on the clock, okay? I will do my best. Thank you, your honor. Because that's your full time. Yes, thank you. Your honor, this case has always been a complicated case, and I worry it's only gotten more so since the party's completed briefing. So I'm going to try to do my best to break it down to what I believe are the two most critical questions that are facing this court. And the first question goes to timeliness, and that's whether Johnson created a new right that applies to the mandatory guidelines, or whether after Beckles, Johnson's application to the mandatory guidelines is an open question. Let me ask you this, counsel. The three other circuits, Brown in the fourth, Raybon in the fifth, is limited into the ACCA context, and have rejected arguments that are similar to the ones that you make. If we follow those sister circuits and their reasoning, isn't Blackstone's section 2255 motion untimely? Yes, your honor. Absolutely. But we would certainly urge the court not to do so. And let me explain why. Those courts limited Johnson to its holding. But the language of section 2255 speaks of rules and of rights, and asks the court to define what the rule of Johnson is, which is certainly broader than its holding. And I think even the government would agree with this. The rule in Johnson, as we understand it, is a right not to be sentenced under an arbitrary and standardless residual clause imposed under a mandatory sentencing provision. And that would be a provision that fixes the So those courts have said, you know, Johnson only spoke to the ACCA, that's its holding, and that's where we stop. But what the first circuit said, and more, I think is particularly compelling, it said Congress in section 2255 used words such as rule and right rather than holding. Congress presumably used these broader terms because it recognizes that the Supreme Court guides the lower courts, not just with technical holdings, but with general rules that are logically inherent in those holdings, thereby ensuring less arbitrariness and more consistency in our law. And I read that quote in full because I think it encapsulates the important concepts. It's a textual demand, and then it also does serve this fundamental purpose in our justice system of allowing the Supreme Court to be a court that announces rules of general application, not a court of error correction that must announce this factual scenario. So turning back to the rule of Johnson, the party's dispute here is actually quite narrow. There's no dispute that the language at issue in ACCA and the mandatory guidelines is identical, and that it's always been subject to the same constitutionally infirm mode of analysis. So the dispute turns on whether the mandatory guidelines is a provision that fixed the defendant's sentence. The government has contended that only a statute can fix the defendant's sentence. And I submit that there's no support for that in Johnson, in Beckles, or anywhere else. Is there any support for your approach to it? Yes, Your Honor. The support comes quite clearly from the Supreme Court's decision in Booker. Booker decided for apprendee purposes that the maximum guideline range was the practical equivalent of the statutory maximum, and that is why the guidelines are advisory today. And the court in Booker actually addressed the exact arguments that the government is making to this court here. The court said the availability of departures does not save, does not solve the constitutional issue, and neither does it here. The government here says it was possible to get a sentence outside the guidelines range, there was discretion in the system of mandatory guidelines, and therefore they don't really fix the sentence. And that is exactly what the government said in Booker, and exactly what the Supreme Court said is not the case. And that is why the Supreme Court then excised the statutory provision 3553B that made the guidelines mandatory. And I emphasize statutory provision because the government has drawn what I submit is a specious distinction between statutes and mandatory by virtue of a statute. And beyond Booker, I think that Beckles actually provides further support for our conclusion here, and that's because Beckles contrasted the advisory guidelines with the mandatory guidelines by saying that, citing Arizeri, there were due process notice concerns that adhered in a world of mandatory guidelines. And those no longer adhere in a world of advisory guidelines. Advisory guidelines can't be arbitrary because they're not enforced at all. And that is in direct contrast to the world of mandatory guidelines, where the sentence was very much fixed. And that makes, under Beckles, that makes the mandatory guidelines a provision that fixes the sentence. So I think as the government, and I'm sure government counsel will speak for herself on this, but as the rule in Johnson is defined, the only dispute is as to the mandatoriness, how mandatory, and I think Booker has answered that question. Kennedy, of course, is not the only dispute. I mean, Beckles also gives you the concurring opinions of Justice Ginsburg and Justice Sotomayor, which both seem to suggest that the list in the commentary is enough to satisfy, for their purposes, the question in Beckles they wouldn't have reached more broadly. Well, that argument could still be applied here. We still have the commentary. We still have the specifications of crimes there. Right. And I understand your argument, but isn't that something you need to deal with? Yes, absolutely, Your Honor. And I think that's the critical merits question before the court. Can the commentary somehow cure the residual clause and save it from fatal vagueness? So the first point I'd like to make here is that the commentary is not a fourth-standing, stand-alone provision of the career offender guideline. There are three textual provisions, and then the commentary, which purported only ever to define the residual clause. And the Stinson principle, the Supreme Court said, a commentary is valid only insofar as it interprets or explains a valid textual provision. So the commentary can't be interpreting the force clause because those offenses, this Court has found time and again, don't involve an element of force. And, of course, it makes no sense to say that it's interpreting the enumerated offenses, so you're left with the residual clause. So can it clarify the residual clause? And I think with all due respect and great admiration for Justice Ginsburg, her analysis started from the wrong body of law. She looked to Village v. Hoffman Estates, which is a case about the principles of comedy and federalism. When must a federal court defer to a state court's interpretive guidance as to its own regulation? But here we are looking at an agency. That's what Stinson said, that the commission is the equivalent of an agency. So there are two reasons, essentially, why I think her interpretation is not supportable. The first stems from Johnson itself, and the second stems from longstanding principles of agency law. So under those principles of agency law, and I'll call this the M. Krause and the paralyzed veterans principle, I think it's two sides of the same coin, M. Krause said when an agency sets forth a criminal penalty, it must do so in the language of the law, not in interpretive guidance. And that's because the ordinary citizen cannot be expected to go all the way through the rule books of interpretive guidance in order to determine what the law means. They're allowed to look at the law itself. Do you want to save me any of your time? I will, actually. I would love to just finish this point, and I will save the rest. Thank you so much, Your Honor. The second point is that under principles of deference in federal courts, the agency cannot promulgate much, is the phrase from paralyzed veterans, but it can't promulgate a regulation that's essentially standardless and purport to define it only in commentary. And that's because it creates a critical separation of powers problem. Congress passes on the language of the guideline only and not upon the commentary. So it expands the power of the commission beyond constitutional bounds to put commentary on par with text. And that is essentially the second half of that principle. And I'll reserve my time. Thank you. Thank you. Good morning. Good morning, Your Honors. May it please the Court. Ashley Aul for the United States. A series of gates, most of them imposed by AEDPA, stand between defendant and 2255 relief in this case. And defense counsel and I, I think, agree on which the first three gates are. The first is timeliness, the second is retroactivity, and the third is the as-applied vagueness issue. And I'll go in order. First, on timeliness, as Judge Smith identified, the Fourth, Sixth, and Tenth Circuits have all adopted the government's argument on the merits. I would add two more circuits to that list, the Eighth in Donnell and the Fifth in Arnick, reach the same conclusion but in the context of denying a COA. I would urge the Court to adopt the same reasoning. The only contrary cases on which defendant relies are cases in which circuits have granted a COA. And, of course, the standard for granting a COA is much lower under 2255H. A COA was, of course, granted in this case. And those decisions have no more persuasive authority than the fact that a COA was granted here. On the merits, every circuit to address the issue has concluded that a petition raising these issues is not timely. And defendant's expansive definition of right under 2255F is inconsistent with the Supreme Court's narrow literal readings of AEDPA. The Court can look at Saffel v. Parks, for instance. There, the Supreme Court defined the right recognized in two prior cases with reference to the precise holdings of those cases. And as the Tenth Circuit recognized in Greer and Judge Kaczynski recognized in the District Court case Colasanti, that simply isn't an appropriate definition under AEDPA. Going to the second issue, retroactivity, Griffin in the Eleventh Circuit, I submit, got this exactly right. In Mistretta, the Supreme Court described the pre-Booker guidelines, I think, accurately as fettering the discretion of sentencing judges to impose sentences within the broader limits set by Congress. That articulation is interesting because if the Court lines that up to various statements by the Supreme Court distinguishing substantive from procedural rights, the Court will see that the mandatory guidelines rule that the defendant has proposed would fail every single one of the tests. So, for instance, in Schrierow, the Supreme Court emphasized that a substantive rule is one that would result in punishment that the law cannot impose. That's not true here. Remedy would be potential imposition of exactly the same sentence. I'm troubled by Booker itself, though, because the whole point of the remedy in Booker was to solve the problem posed by the fact that the guidelines were mandatory. If you act like the guidelines before Booker were guides, then there's no reason for Booker in the first place. The distinction that Booker draws by saying the remedy to our problem pre-Booker is the post-Booker world where the guidelines become advisory, that suggests that pre-Booker the guidelines were something more than just advisory. The simplest answer to Your Honor's question is Cruz. This defendant has no good answer to Cruz. This Court has already determined that Booker itself was procedural rather than substantive. And as a result, the remedy adopted in Booker is not applied retroactively on collateral review. That's the holding of Cruz. And I would submit to the Court that the part is, of course, contained in the whole. If eliminating all mandatory guidelines isn't substantive, then, of course, eliminating just one mandatory guideline also isn't substantive. There's no way to square defendant's reasoning with Cruz. And I would add that this Court has also found that Alain and Apprendi are procedural and also don't apply retroactively on collateral review. All those holdings are of a part, I would submit. Then you've got Welch, which says the rule of Johnson is retroactive. And the difference there, Your Honor, is that the mandatory guidelines constrained district court's discretion within broader limits set by Congress. And so, as I was saying, there's no way that a sentence imposed under the mandatory guidelines after the elimination of the mandatory guidelines would result in an illegal sentence. The sentence would still be legal. And I would submit to the Court that it actually involves, very similar to in Booker, an allocation of decision-making authority. In Booker, the allocation of decision-making authority was between the Congress and the guidelines. Here, it's between an individual judge and the sentencing commission. When you eliminate the mandatory guidelines, more discretion is put onto the sentencing judge to choose a sentence within the bounds set by Congress. But it does not have the automatic consequence of invalidating a sentence that was imposed under the mandatory guidelines. To the contrary, it's perfectly possible that a defendant would receive the same sentence. And under Montgomery, that is the test. Similarly, under Welch, the Court identified there that even the most impeccable fact-finding procedure could not legitimate a sentence. Because there, of course, you would end up with a sentence above the stat max if ACCA didn't apply. Here, if the mandatory guidelines don't apply, you can't end up with a sentence above the stat max. You always end up with a sentence that's within congressional bounds. And so, it's exactly the opposite as in Welch. Impeccable fact-finding could legitimate the sentence. In fact, fact-finding easily can legitimate the same sentence. And all of those articulations of the test, as in Schrierow, as in Montgomery, as in Welch, all lead, I submit, to the same conclusion, which is that the rule defendant is articulating would not apply retroactively on collateral review. And I would also, defendant has articulated this principle that retroactivity is a categorical matter as a rebuttal to this point. And that's true so far as it goes, but I submit that it doesn't mean what defendant says it means. The Supreme Court said that in rejecting the link letter standard, which was the pre-Schrierow standard for determining retroactivity, that was completely freewheeling and factual on a case-by-case basis. And, of course, that's not what we're advocating here. But it certainly isn't the case that whenever the Supreme Court says this phrase is unconstitutional, that that rule, no matter where it's applied, would be substantive rather than procedural. A hypothetical, I think, makes this clear. Rule 609, for instance, of the Federal Rules of Evidence, demonstrates when a defendant's prior conviction can be admitted in court. And it has conditions for when that prior conviction can be admitted. It doesn't have a residual clause. But if it did, if it said that one of the conditions under which a prior conviction could be admitted were that it satisfies the residual clause of ACCA, and then the court were to strike that, of course that would be procedural. It would just change an evidentiary rule. The happenstance that the same language is used isn't determinative of that case. And, finally, on the as-applied challenge, even assuming that vagueness principles apply to the guidelines, the easiest retort to defendant's position here is, in fact, the very pre-Booker cases on which defendant relies. In Gallagher and in Johnson and in Reardon, this court entertained vagueness challenges to the pre-Booker guidelines, and in every single case did an as-applied analysis and concluded that the defendant could not prevail. The excisement arguments that defendant relies on are, just as the concurrences and Beckles recognized, contrary to the normal order of operations in as-applied vagueness challenges. Soto-Rivera and Rollins and Bell, which are the pre-Beckles direct appeal cases on which defendant relies, first of all, they all predate Beckles, and so they're questionable on that ground alone. But they also involved a direct appeal where there was no vagueness issue there. On direct appeal, you just had to strike the language because it was, at that point, presumptively invalid. But when we're talking, when we're in the 2255 context and we're looking at vagueness, of course the commentary still has power. At the time, it had power. Judge Kaczynski, I submit, got this right in Castaneda, the district court case that he sat in our district, in which he concluded that, of course, the commentary limits the scope of behavior and makes it clear in that context that a defendant's prior conviction would be covered. It's also consistent, for instance, with this court's decision in Harris. Harris is in a different context, of course, but the kinds of things that the court can look to to narrow a statute that is allegedly vague as applied are not limited to anything statutory or congressional at all. In Harris, the defendant challenged a statute that made it illegal to bring a dangerous weapon on a plane, and he had some small knife and said that it was unconstitutionally vague. He didn't know whether or not that small knife was covered. And what the court looked to there were, among other things, what the TSA told him at the airport and signs that were posted around the airport. And if things a particular TSA officer says to you and signs that happen to be up at an airport are sufficient to defeat an as-applied vagueness challenge, certainly written commentary is as well. Let me just ask you. Your adversary's grasp of the cases is admirable, but just on a common-sense basis, if you were writing the opinion here and trying to explain why it is that language in the statute is void for vagueness but in the guideline provision, which is also in a sentencing context, is not, what would you say? So first, I would say that the court has to analyze it on an as-applied basis first. That's different in and of itself. In Johnson, the court was simply doing a facial analysis of the statute. There weren't any as-applied arguments there. And so in this context, because there are no First Amendment considerations, the court first has to analyze the statute on an as-applied basis. So you're looking at the specific crimes? Is that what you're looking at? You're looking at the defendant's specific prior. And in this case, it's easy because both of the defendant's specific priors are listed in the commentary. Both robbery and manslaughter are listed in the commentary. And so as a result, you don't get to the facial analysis that Johnson undertook. We've put the harder question is, of course, what would happen under such a facial analysis. But I submit that the court has no reason to. You're not asking us to even reach that? I don't think the court can reach it, to be honest. I think in this case, the timeliness is the first bar. And though the court, I believe, still has the discretion to reach the merits, then the second bar would be retroactivity and or the as-applied issue. And so that's how I would submit that the court would write the opinion. Other questions by my colleagues? Thank you very much. Thank you. A little bit of rebuttal time. I will try to do the most with it. Johnson itself said it was rejecting the line of authority that explained an as-applied challenge was correct in this context. If you look to Justice Alito's dissent, he said the court is finding the residual clause to be vague even when its application is clear. So even in that context, the justices were acknowledging that there was core conduct that fell within the residual clause's grasp. And the majority said even though some language in our cases have suggested that an as-applied challenge is all that's available, here that our holdings have suggested the opposite. And here we hold the residual clause vague in all of its applications. Would you agree that the Supreme Court's case law in this area is, shall I say, difficult to read sometimes in the sense of understanding exactly what they mean? That may be true, Your Honor, but I think since the question before this court is whether the rule in Johnson applies to an identical provision that fixed the sentence, Johnson would be the case to guide the court. And Johnson said the residual clause creates so much arbitrariness, it is so standardless that it cannot be understood and it must be struck because of the due process question it presents. And no list of offenses which may be core conduct can save that. It can't cure that arbitrariness that the court identified. Well, but I'm not sure I understand. The government seems to be relying on the commentary that is in the guideline but is not in the statute. So why can't we do that? Well, Your Honor, I think that that commentary, let's assume that commentary is core residual clause conduct. Even the existence of core residual clause conduct under the ACCA, the court considered that and said we have tried to keep defining and keep defining. Well, but it did so in the context of something that didn't so expressly define what the core conduct was. I think that's true, Your Honor, but all the same, I do think the principle still applies that the core problem with the residual clause, its standardness, its arbitrariness, can't be saved by this limited list of crimes. And to the extent Your Honor does not find that compelling, we still have the concomitant agency law arguments on the same point. Other questions by my colleagues? We know you have lots more to say, but your time is up. So we thank you very much for your argument, rebuttal. Thanks to both counsel for your very learned arguments and we compliment you on how well you know these cases. Thank you, Your Honor. The case just argued is submitted.
judges: Schroeder, Clifton, M. Smith